UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------- X

JULIAN SALIM,

                Appellant,

     -against-

VW CREDIT, INC.,

                Appellee.

---------------------------------------X

**MEMORANDUM AND ORDER**

16-CV-01930(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

       Julian Salim ("Salim" or "appellant") brings this appeal
from the March 16, 2015 Memorandum Decision of Judge Elizabeth S.
Stong of the Bankruptcy Court for the Eastern District of New York,
which granted partial summary judgment to VW Credit, Inc. ("VCI"
or "appellee").  For the reasons set forth below, the court DENIES
appellant's appeal, and AFFIRMS the Bankruptcy Court's decision in
its entirety.

**BACKGROUND**

       The facts giving rise to this dispute are not contested
by either party.[1]

---

[1] Many of the underlying facts were litigated in two summary judgment motions
before Judge Paul A. Engelmayer of the United States District Court for the
Southern District of New York.  Additionally, appellant did not contest
appellee's Statement of Undisputed Material Facts under Local Rule 7056.1 before
the bankruptcy court.

Big Apple Volkswagen, LLC, ("Big Apple") is a car dealership in the Bronx, New York. Appellant was a managing member and a part owner with John Koeppel and Gzregorz Samborski of Big Apple.[2] (ECF No. 5, Appellant Br. at 5; Adv. Proc. No. 31, Salim Aff. ¶ 2.)[3]

## I. The Loan Agreements

VCI provided Big Apple with a loan to enable Big Apple to purchase an inventory of motor vehicles, and provided Big Apple with a working capital line of credit in the form of promissory notes, executed on June 12, 2006, and March 19, 2007, respectively.

On June 12, 2006, Big Apple executed a promissory note, in the amount of $3,347,500.00, and a master security agreement (collectively, "Wholesale Loan Agreement"). (ECF No. 7, Appellee Opp. Br. at 4; Adv. Proc. No. 24, Jeffrey-Alexander Aff. ¶ 9.) Under the terms of the Wholesale Loan Agreement, upon the sale or lease of any vehicle, Big Apple was obligated to, *inter alia*, remit to VCI all sums owing from VCI's advance on the vehicle. (Adv. Proc. No. 24, Jeffrey-Alexander Aff. Ex. 1, Master Sec. Agmt. at 1.) Big Apple also agreed to repay VCI the total amount outstanding under the note, in the event of a default. (*Id.* at 4.) On March 19, 2007, Big Apple executed a second promissory

---

[2] Koeppel's partnership stake was purchased by Samborski and Salim in or around 2010, at which point Koeppel's ownership interest in Big Apple was extinguished. (Adv. Proc. No. 31, Salim Aff. ¶¶ 2-3.)

[3] Citations to the adversary procedure Bankruptcy Record before Judge Stong, contained in ECF No. 2, shall be referenced as citations to "Adv. Proc."

note, in the amount of $250,000.00, and a master security agreement (collectively, "Capital Loan Agreement"). (Adv. Proc. No. 24, Jeffrey-Alexander Aff. ¶ 13.) Pursuant to the terms of the Capital Loan Agreement, Big Apple agreed to repay the sums owing, with interest, at a schedule specified therein. (*Id.* ¶ 14.)

Under the terms of both loan agreements, Big Apple granted to VCI a security interest in Big Apple's inventory of vehicles, chattels, and proceeds. (Adv. Proc. No. 24, Jeffrey-Alexander Aff. Ex. 1, Master Sec. Agmt. at 2; *id.* Ex. 2, Sec. Agmt. and Capital Loan Agmt. at 2.) The two loan agreements were cross-defaulted, meaning that a default under either loan agreement would constitute a default of the other. (*Id.* Ex. 1, Master Sec. Agmt. at 4; *id.* Ex. 2, Sec. Agmt. and Capital Loan Agmt. at 5.) On October 29, 2008, appellant executed a continuing guaranty, under which he personally guaranteed Big Apple's obligations to VCI under both loan agreements. (*Id.* Ex. 3, Continuing Guaranty.)

Appellant claims to have borrowed $300,000.00 from Salim's mother, which he states was used to provide initial funding for Big Apple. (ECF No. 5, Appellant Br. at 6.) A letter loan agreement, "effective June 1, 2006," reflects that Big Apple and appellant would make annual payments to Salim's mother, with the loan to be paid in full by April 1, 2011. (Adv. Proc. No. 23, Little Decl. at 1118.) Appellant testified that he believed the loan from his mother was a secured debt, noticed with a UCC

financing statement, but could not explain why the UCC financing statement was filed two years after the purported loan from his mother. (Adv. Proc. No. 23, Little Decl. Ex. 18, Julian Salim Dep. at 39-40; Adv. Proc. No. 23, Little Decl. at 1124.)

## II.  VCI's Interest and Audit

On March 11, 2011, upon learning that Big Apple was four months past due on a mutual vendor's account, VCI sought to audit Big Apple's automobile inventory. (Adv. Proc. No. 24, Jeffrey-Alexander Aff. ¶¶ 21-22.) VCI's audit team was initially turned away by Big Apple management. (*Id.* ¶ 23.) On March 15, 2011, VCI learned that Big Apple was conducting a "secret liquidation of its inventory." (*Id.* ¶ 24.) VCI was successfully able to complete an audit by March 16, 2011. The audit revealed that Big Apple had sold seventy-eight vehicles from its inventory and failed to remit payments, in the amount of $1,237,615.86, to VCI as required by the loan agreements. (*Id.* ¶ 26.) In the automobile finance industry, such a sale is sometimes termed a "sale out of trust." *VW Credit, Inc. v. Salim (In re Salim)*, No. 13-42974, Adv. Proc. No. 13-01442, 2015 WL 1240000, at *3 (Bankr. E.D.N.Y. Mar. 16, 2015). In response, VCI accelerated Big Apple's obligations under the loan documents. (Adv. Proc. No. 23, Little Decl. at 255.) At that time, the accelerated amount immediately due and payable to VCI from Big Apple was $3,888,059.84 under the Wholesale Loan Agreement and $54,263.45 under the Capital Loan Agreement.

## III.  Southern District of New York District Court Proceedings

On March 21, 2011, VCI filed a complaint against Big Apple, appellant, Koeppel, and Samborski, in the Southern District of New York alleging claims for breach of contract, breach of guaranties, and replevin of the collateral. *VW Credit, Inc. v. Big Apple Volkswagen,* LLC, No. 11-cv-1950, 2012 WL 919386, at *2 (S.D.N.Y. Mar. 15, 2012) ("*Big Apple I*").  On March 30, 2011, Big Apple filed a voluntary Chapter 11 bankruptcy petition in Bankruptcy Court for the Southern District of New York, and the District Court action against Big Apple was stayed.  After the parties completed discovery, it was revealed that Big Apple had withdrawn and transferred $718,000.00 out of its account on March 14, 2011, and had withdrawn and transferred $504,271.14 out of its account on March 15, 2011.  (Adv. Proc. No. 24, Jeffrey-Alexander Aff. ¶¶ 34-41.)  Appellant admits that money was transferred out of the account prior to Big Apple initiating bankruptcy proceedings, but disputes that Big Apple was considering bankruptcy at that time.  Specifically, appellant states that he transferred $485,000.00 to Rami Osman, an individual in Syria from whom appellant sought to purchase vehicles, $325,000.00 to his brother in Syria to deliver to Osman in order to purchase vehicles, and $335,000.00 to his mother to repay her for her initial loan. (ECF No. 5, Appellant Br. at 6.)

On March 15, 2012, Judge Paul A. Engelmayer granted VCI summary judgment as to the liability portion of VCI's breach of contract claims against Koeppel, Samborski, and appellant. Judge Engelmayer found that Big Apple had sold numerous vehicles, but failed to remit any payment to VCI. Because Koeppel, Samborski, and appellant had personally guaranteed the contract, Judge Engelmayer concluded that they had breached their contract with VCI and were liable for damages. *Id.* at *3-4.

On November 29, 2012, Judge Engelmayer granted summary judgment on VCI's motion as to damages on the breach of contract claim against Koeppel, Samborski, and appellant. Judge Engelmayer found that there was no genuine issue of material fact as to the damages owed to VCI, and determined that Koeppel, Samborski, and Salim were liable to VCI in the amount of $1,146,758.11. *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11-cv-1950, 2012 WL 5964393, at *5 (S.D.N.Y. Nov. 29, 2012) ("*Big Apple II*"). This sum was composed of $514,835.20 in principal and $59,476.29 in interest owing under the Wholesale Loan Agreement, $54,166.98 in principal and $2,245.24 in interest owing under the Capital Loan Agreement, $349,204.65 in attorneys' fees, $50,578.10 in private security expenses and $116,242.65 in management expenses. *Id.* at *3.

## IV.   Bankruptcy Proceedings

On May 15, 2013, appellant filed for Chapter 7 bankruptcy in the Eastern District of New York, in which he sought to discharge the $1,146,758.11 judgment entered against him in the Southern District action. *In re Salim*, 2015 WL 1240000, at *3. On August 15, 2013, VCI commenced an adversary proceeding by filing a complaint seeking a determination that the judgment against Salim is nondischargeable pursuant to Bankruptcy Code Section 523(a)(4), on the grounds that appellant's conduct of directing the sale of vehicles, failing to remit payments to VCI, and making unauthorized transfers of VCI's funds to his family members, constituted defalcation while acting in a fiduciary capacity or, alternatively, embezzlement; VCI also alleged nondischargeability pursuant to Section 523(a)(6) on the grounds that, by converting the funds from the sale of VCI's collateral, appellant willfully and malicious injured VCI. *Id.* at *5.

On June 11, 2014, VCI moved for summary judgment on its claims against appellant.  On March 16, 2015, Bankruptcy Judge Elizabeth S. Stong denied VCI's motion for summary judgment with respect to its claims under Bankruptcy Code Section 523(a)(4), but granted VCI's motion for summary judgment under Bankruptcy Code Section 523(a)(6).

Judge Stong first found that collateral estoppel prevented the parties from relitigating Judge Engelmayer's

determinations that Big Apple "sold 78 vehicles from its inventory, but did not remit payment, as required under the Wholesale Loan Agreement, to VCI," and that, in accordance with the terms of the continuing guaranty executed by appellant, appellant was liable to VCI in the amount of $1,146,758.11. *Id.* at *13. Judge Stong next denied VCI's motion for summary judgment on its Section 523(a)(4) claims. Finally, Judge Stong granted VCI summary judgment as to its claim under Bankruptcy Code Section 523(a)(6). Judge Stong concluded that summary judgment was appropriate because appellant had acted willfully and maliciously, and injured VCI. *Id.* at *25-29. Judge Stong's Memorandum Decision and Order entering summary judgment in favor of VCI was entered on March 16, 2015. This appeal followed.

## STANDARDS OF REVIEW

### I.  Standard on Bankruptcy Appeal

This court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a). A district court generally reviews the findings of fact of a bankruptcy court for clear error and reviews conclusions of law *de novo*. *3939 WPR Funding LLC v. Campbell (In re Campbell)*, 539 B.R. 66, 72 (S.D.N.Y. 2015). "[O]n appeal

specifically from a bankruptcy court's summary judgment, the standard of review is *de novo*." *Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.)*, 309 B.R. 830, 835 (S.D.N.Y. 2003); *see also Cohen v. Treuhold Cap. Grp., LLC (In re Cohen)*, 422 B.R. 350, 365 (E.D.N.Y. 2010).

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), which applies in an adversary proceeding pursuant to Bankruptcy Rule 7056, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). "A fact is material if it might affect the outcome of the suit under governing law." *Royal Crown Day Care LLC v. Dep't of Health and Mental Hygiene of the City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).

The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). After the moving party satisfies its burden, the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original) (citation omitted). The nonmoving party cannot avoid summary judgment by "rely[ing] on conclusory allegations or unsubstantiated speculation," *Brown*, 654 F.3d at 358 (quotation marks and citations omitted), but must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty. N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

The court is required to view the evidence in the light most favorable to the party opposing summary judgment, and to draw all reasonable inferences in favor of that party. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). The court must find a genuine issue of material fact to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted); *accord Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012).

**DISCUSSION**

Appellant argues that Judge Stong incorrectly applied collateral estoppel to the issue of intent, and that appellant has raised a genuine issue of fact regarding whether or not his actions were willful and malicious. Appellee argues that Judge Stong's opinion should be affirmed, that appellant's appeal should be dismissed as untimely, and that appellant's appeal should be dismissed for failure to comply with Bankruptcy Rule 8014. For the following reasons, the court denies appellant's appeal because it is untimely. In the alternative, even if appellant had timely filed his appeal, the court would affirm Judge Stong's decision in its entirety.

## I. Timeliness of Appeal

VCI argues that the court should dismiss appellant's appeal as untimely because the March 16, 2015 Order granting summary judgment to VCI that appellant's debt was not dischargeable was a final order that was appealable under 28 U.S.C. § 158(a). VCI asserts that the March 16, 2015 Order fully adjudicated the "singular" claim that appellant's debt was nondischargeable. (ECF No. 7, Appellee Br. at 20-22.) Appellant argues that the March 16, 2015 Order only granted partial summary judgment, and was therefore an unappealable interlocutory order. (ECF No. 9, Appellant Reply at 2-3.) For the following reasons, the court concludes that the Bankruptcy Court's March 16, 2015 Order was a

final order that disposed of VCI's claim that Salim's debt is nondischargeable. Consequently, the appeal is dismissed as untimely.

This court has appellate jurisdiction to hear bankruptcy appeals "from final judgments, orders, and decrees," or, "with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1). Generally, "a final order is one that conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order." *Shimer v. Fugazy (In re Fugazy Exp., Inc.)*, 982 F.2d 769, 775 (2d Cir. 1992). "The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation." *Ades-Berg Investors v. Breeden (In re The Bennett Funding Grp.)*, 439 F.3d 155, 160 (2d Cir. 2006) (quoting *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1283 (2d Cir. 1990)). The Second Circuit has "thus recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of *discrete disputes within the larger case*." *Id.* at 160 (emphasis in original). In the context of a bankruptcy appeal, a "dispute" means "at least an entire claim on which relief may be granted." *In re Fugazy Exp., Inc.*, 982 F.2d at 775-76; *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 407 (Bankr. E.D.N.Y. 1989) (a final order is one that finally resolves a particular controversy or

"conclusively determines a separable dispute over a creditor's claim"). In contrast to a final judgment, which requires a separate entry of judgment to become appealable, a separate document is not necessary to effectuate the finality of a final order in a bankruptcy case. *See In re The Bennett Funding Grp.*, 439 F.3d at 161 ("In this case we are dealing with a final order as opposed to a final judgment, and no separate document is necessary to effect its finality.").

Appellant asserts that the Bankruptcy Court only granted partial summary judgment, and that VCI's claim under Bankruptcy Code 523(a)(4) was still pending. Therefore, appellant argues, the March 16, 2015 Order is an interlocutory order and did not become appealable until VCI's remaining claims under Bankruptcy Code Section 523(a)(4) were voluntarily dismissed.

The court disagrees, and holds that the March 16, 2015 Order was a final order and was, therefore, appealable as of right under 28 U.S.C. § 158(a)(1). Judge Stong's order conclusively adjudicated an entire claim upon which relief could be granted. By granting summary judgment to VCI on its claim under Bankruptcy Code Section 523(a)(6), the order determined that Salim's debts were nondischargeable. VCI's claims under Bankruptcy Code Section 523(a)(4) did not provide for separately enforceable recovery. Rather, Salim's conduct was alleged to have only caused a single harm which resulted in a judgment of liability and damages.

Whether VCI was granted summary judgment on either theory presented in its claim of nondischargeability in the adversary proceeding, VCI sought the same remedy of nondischargeability on the same debt, irrespective of the specific basis under the Bankruptcy Code. After the Bankruptcy Court concluded that Salim's debts were nondischargeable under Section 523(a)(6), there was no further relief for VCI to seek, and "there was simply nothing further to be done in the Bankruptcy Court." *In re The Bennett Funding Grp., Inc.*, 439 F.3d at 164; *see Nitzche v. Muscatello (In re Muscatello)*, No. 06-cv-453, 2006 WL 3437469, at *3 (N.D.N.Y. Nov. 29, 2006) ("A final order in a bankruptcy case becomes ripe for appeal when nothing is left for the bankruptcy court to decide on the issue."). Accordingly, because Judge Stong's March 16, 2015 Order conclusively determined the rights and liabilities of both parties to the adversary proceeding, the nondischargeability of appellant's debt, it was a final order that was appealable pursuant to 28 U.S.C. § 158(a)(1).

To appeal timely from an order of a bankruptcy court to a district court, a party must file a notice of appeal within the time prescribed by Federal Rule of Bankruptcy Procedure 8002. Fed. R. Bankr. P. 8001(a). Rule 8002 requires that a party file a notice of appeal within fourteen days of the "date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a). Over a year had elapsed between Judge Stong's final order

was entered on March 16, 2015, and appellant filing this appeal on April 20, 2016, and consequently, the appeal is dismissed as untimely.[4]

## II.  Merits

The court dismisses this appeal because it is untimely. Even if the appeal were timely, however, the court would affirm Judge Stong's March 16, 2015 Order that appellant's debt is not dischargeable.  First, upon *de novo* review, the court concludes that Judge Stong properly applied collateral estoppel.  Second, upon *de novo* review, the court affirms Judge Stong's conclusion that Salim's conduct was willful and malicious under Bankruptcy Code Section 523(a)(6).

### A. Collateral Estoppel

"Parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).  The federal principles of collateral estoppel, used to establish the preclusive effect of a prior federal judgment, require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair

---

[4] Appellee urges the court to dismiss appellant's appeal for failure to comply with Federal Rule of Bankruptcy Procedure 8014.  Because the appeal is dismissed as untimely, the court need not consider appellant's additional procedural grounds for dismissal.

opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (citing *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

Judge Stong held that collateral estoppel applied to the following determinations by Judge Engelmayer: "that Big Apple sold vehicles without remitting payment to VCI, that VCI accelerated payments due under the Loan Agreements after discovering Big Apple's breach, . . . that Salim personally guaranteed those agreements[,] . . . determined VCI's damages from the sale out of trust, and . . . [that] VCI's damages included consequential damages such as VCI's expenses to protect its collateral, as well as its attorneys' fees and costs." *In re Salim*, 2015 WL 1240000, at *13.

Appellant argues that VCI's allegations of fraud and the issue of whether he was willful and malicious was not considered in Judge Engelmayer's opinions, and therefore would not be subject to collateral estoppel. Although Judge Stong agreed with appellant that Judge Engelmayer did not consider appellant's intent, Judge Stong's opinion expressly acknowledged that, and did not apply collateral estoppel to the issue of appellant's intent. *Id.*

Furthermore, upon a *de novo* review, the court finds that collateral estoppel was appropriately applied to Judge Engelmayer's findings: the sale out of trust by Big Apple, which

sold vehicles without remitting payment to VCI; VCI accelerated payments due under the loan agreements after discovering Big Apple's breach; Salim signed a personal guaranty and was thus liable; VCI suffered damages from Big Apple's sale out of trust; and VCI's damages were in the amount of $1,146,758.11. The foregoing identical issues to those that were actually litigated, considered and decided by Judge Engelmayer were again raised by appellant in the adversary proceeding. Appellant was represented in each proceeding and had a full and fair opportunity to litigate the issues, and the resolution of these same issues was necessary to support a full and final judgment on the merits in the district court case before Judge Engelmayer. *See Big Apple I*, 2012 WL 919386 at *3-6; *Big Apple II*, 2012 WL 5964393 at *2-5.

Accordingly, appellant's request for the court to reverse the Bankruptcy Court's application of collateral estoppel is denied.

## B. Section 523(a)(6)

### i. Legal Standard

The Bankruptcy Code permits individuals to discharge preexisting debts in order to give afford relief to "honest but unfortunate" debtors. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). Bankruptcy Code Section 523, however, provides numerous exceptions to this principle. One of those exceptions, Section 523(a)(6), provides in pertinent part, that "[a] discharge under

. . . this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). "The terms willful and malicious are separate elements, and both elements must be satisfied." *Soliman v. Vyshedsky (In re Soliman)*, 539 B.R. 692, 698 (Bankr. S.D.N.Y. 2015) (internal citation and quotation marks omitted). "A [party] seeking to establish nondischargeability under § 523(a) must do so by the preponderance of the evidence." *Ball*, 451 F.3d at 69.

For a debt to be nondischargeable under Section 523(a)(6), the injury caused must have been willful. *See Kawaauhau v. Geiger*, 523 U.S. 57 (1998). The section's word "'willful' . . . modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61. This language is read to impose a requirement "that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61–62 (emphasis in original). Injuries inflicted negligently or recklessly are an insufficient basis to deny a debtor a discharge under the statute. *Id.* at 64.

Extrapolating from the Supreme Court's analysis of the willfulness requirement of Section 523(a)(6) in *Geiger*, district courts and bankruptcy courts in this Circuit have coalesced around a "substantially certain" test; courts find willful intent to cause

injury where "the actor knows that the consequences are certain, or substantially certain, to result from his act." *Margulies v. Hough (In re Margulies I)*, 517 B.R. 441, 452 (S.D.N.Y. 2014) (citing Restatement (Second) of Torts § 8a, cmt. b). Although the Second Circuit has not yet provided guidance, courts in this Circuit have further concluded that "substantial certainty" must be judged subjectively rather than objectively. *See Margulies v. Hough (In re Margulies II)*, 566 B.R. 318, 329-30 (S.D.N.Y. 2017) ("The Second Circuit has not taken a stance on the question, but courts in the Second Circuit generally apply a subjective standard of intent[.]" (internal quotation marks and citation omitted)), *appeal docketed*, No. 17-1073 (2d Cir. Apr. 13, 2017); *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017) ("Courts in the Second Circuit generally apply a subjective standard of intent."); *Cocoletzi v. Orly (In re Orly)*, No. 15-11650, 2016 WL 4376947, at *5 (Bankr. S.D.N.Y. Aug. 10, 2016) (applying a subjective intent standard); *Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015) (collecting cases) ("Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required" for the purposes of Section 523(a)(6).).

With respect to the malice requirement, the Second Circuit has stated that, as used in Section 523(a)(6), "'malicious' means wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *In re Stelluti*, 94 F.3d 84, 87-88 (2d Cir. 1996); *accord Ball v. A.O. Smith Corp.*, 451 F.3d at 70. Malice may either be actual or implied by the circumstances surrounding the debtor's conduct and actions. *In re Stelluti*, 94 F.3d at 88. Judge Stong ruled that a breach of contract in the context of other aggravating factors may give rise to a § 536(a)(6) claim, including the "failure to pay [a debt] from funds that the debtor had agreed specifically to earmark for that purpose . . . [which were] accessible and not otherwise encumbered . . . [and where the debtor] deliberately and intentionally refused to turn over the sale of proceeds." *In re Salim*, 2015 WL 1240000, at *24 (quoting *Alessi v. Alessi (In re Alessi)*, 405 B.R. 65, 68 (Bankr. W.D.N.Y. 2009)). "Malice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Ganci v. Townsend (In re Townsend)*, 550 B.R. 220, 227 (Bankr. E.D.N.Y. 2016) (internal quotation marks and citation omitted), *aff'd*, 566 B.R. 129 (E.D.N.Y. Feb. 27, 2017). "[M]alice . . . does not mean with personal animus, but simply that the act is wrongful and without cause or excuse." *Forest Diamonds Inc. v. Aminov Diamonds LLC*,

No. 06-cv-5982, 2010 WL 148615, at *14 (S.D.N.Y. Jan. 14, 2010)
(J. Lynch).  A breach of contract, alone, without some independent
tortious conduct, does not generally satisfy Section 523(a)(6).
*Vaughn v. Williams (In re Williams)*, --- B.R. ----, 2016 WL
1092696, at *7 (S.D.N.Y. Mar. 21, 2016).

Where a debtor's actions are motivated by potential
profits, courts have refrained from implying malice in the absence
of additional aggravating conduct.  *See Whitaker Secs., LLC v.
Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 76 (Bankr. S.D.N.Y. 2015)
("Where the debtor is motivated by some potential profit or gain
. . . malice will only be implied where there is additional,
aggravating conduct on the part of the debtor to warrant an
inference of actual malice"); *Am. Honda Fin. Corp. v. Ippolito (In
re Ippolito)*, No. 12-cv-8403, 2013 WL 828316, at *7 (Bankr.
E.D.N.Y. Mar. 6, 2013) ("where a debtor's conduct has potential
for economic gain or benefit, such as a knowing breach of
contract," a creditor must sufficiently show aggravating
circumstances to satisfy § 523(a)(6)'s malice requirement);
*Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550
(Bankr. E.D.N.Y. 2009) (a knowing breach of contract does not
typically satisfy the malice element absent aggravating
circumstances to warrant the denial of discharge).  Merely
identifying a profit motive, however, does not automatically
preclude a finding of nondischargeability.  *See In re Margulies*

*II*, 566 B.R. at 331 (certain conduct, even if motivated by a desperate economic desire, is unjustifiable).

### ii.  **Analysis**

Appellant argues that he raised genuine issues of disputed fact that were material to whether his conduct was willful and malicious under Section 523(a)(6).  (ECF No. 5, Appellant Br. at 18-24.)

### 1.  **Willfulness**

Judge Stong concluded that appellant acted willfully by deliberately and intentionally causing injury to VCI, by causing Big Apple to repay his mother over VCI, despite appellant's personal guaranty of Big Apple's contractual obligation to pay VCI from the proceeds of vehicle sales, and in sending Big Apple's funds outside of the United States to pursue a business venture in Syria.  *In re Salim*, 2015 WL 1240000, at *26.  Judge Stong found that the record reflected that appellant's actions, in failing to remit proceeds of the sale of 78 vehicles to VCI, were substantially certain to cause injury to VCI, as appellant was aware of his contractual obligations and entered into transactions that were inconsistent with those obligations.  *Id.*  While Big Apple was in breach of its contractual obligations to VCI, Salim transferred funds to his mother and brother out of VCI's reach, contrary to his personal guaranty.  The transfers by Salim to his family members occurred at or about the same time that VCI's audit

team sought access to Big Apple's premises, books and records to investigate the sale out of trust. Judge Stong also found that appellant's assertion that he believed his mother held a first lien on Big Apple's assets was contradicted by the plain terms of the loan agreements.

Appellant argues that he did not subjectively believe the consequences were substantially certain to result from his actions. (*Id.* at 18.) He argues that that the following facts, raised in his affidavit in opposition to VCI's motion for summary judgment before the Bankruptcy Court, raise genuine disputes as to whether appellant believed his conduct was substantially certain to injure VCI: (1) he was in the business of buying and selling cars all over the world; (2) he had done other business deals with Osman, an individual in Syria, in the past; (3) he believed that he was buying cars in the ordinary course of business, and had provided the court with the agreement with Osman; (4) Big Apple owed appellant's mother a loan of approximately $300,000; (5) the business was not contemplating Chapter 11 bankruptcy when appellant decided to purchase the vehicles from Syria; (6) appellant believed that the deal in Syria would have been extremely lucrative; (7) shortly after the funds were transferred to Syria, war broke out, resulting in the loss of the funds; (8) appellant travelled to Syria and spent over two months attempting to retrieve the funds; (9) appellant attempted to negotiate a settlement with

VCI; and (10) appellant never intended to hide money from VCI and never expected to lose his business. (*Id.* at 21.)

The court finds that appellant failed to raise a genuine issue of disputed fact as to whether he willfully caused injury to VCI. The record shows that Big Apple breached the Wholesale Loan Agreement by selling 78 vehicles from its inventory but not remitting payment to VCI, and that appellant had guaranteed Big Apple's performance to VCI under the loan agreements. *Big Apple I*, 2012 WL 919386, at *1. Appellant testified that he was aware that VCI had a secured interest in Big Apple's assets when he signed the guaranty. (Adv. Proc. No. 23, Little Decl. Ex. 18, Julian Salim Dep. at 28-29, 32.) Despite this knowledge, however, appellant caused Big Apple to transfer sums to his mother and to Osman while Big Apple was in breach of the loan agreements. Although the facts set forth by appellant may indicate that he believed he was entering into a sound business transaction, they are not relevant to the issue of willfulness. None of the facts set forth by appellant dispute the fact that he was substantially certain that his actions would harm VCI by depriving VCI of funds to which it was entitled and for which the appellant guaranteed payment. The Bankruptcy Court's decision with respect to willfulness is therefore affirmed.

### 2.    Malice

Next, appellant argues that summary judgment should have been denied because the Bankruptcy Court did not consider that his investments in Syria and repayment of the loan to his mother were driven by potential benefits for Big Apple, and therefore were not malicious.    (ECF No. 5, Appellant Br. at 22-24.)    Further, appellant argues that he did not intend to harm VCI.  (*Id.*)

Judge Stong concluded that the record showed that appellant caused Big Apple to breach its contractual obligations to VCI under the loan agreements by intentionally failing to remit, and instead diverting, the proceeds of its vehicle sales, and that appellant personally guaranteed Big Apple's obligations to VCI. The record showed that appellant caused Big Apple to transfer its funds to his mother and brother rather than comply with his obligations to VCI.    Judge Stong also found that appellant's assertions that his understanding of the seniority of Big Apple's debt to his mother was contradicted by the plain terms of the loan agreement and inconsistent with his guaranty.  *In re Salim*, 2015 WL 1240000, at *27.   Judge Stong concluded that, moreover, the record did not show that Big Apple benefitted when appellant caused Big Apple to make payments to his mother and to his brother in connection with a business venture to purchase vehicles in Syria. *Id.*  Finally, Judge Stong considered the fact that appellant made

the transfers around the time of VCI's investigation and audit of Big Apple's sale out of trust.

Upon a *de novo* review, the court agrees with the Bankruptcy Court's conclusion that there is no genuine dispute in the record as to a material fact that appellant's conduct was malicious or without just cause or excuse.

Despite his affidavit, appellant's transfer of $335,000.00 to his mother clearly was in breach of his personal guaranty, and was wrongful and without just cause or excuse. Appellant does not dispute that VCI had a superior position to the proceeds of Big Apple's vehicle sales under the loan agreements. (Adv. Proc. No. 37, Tr. of Aug. 19, 2014 hrg. at 31 ("[Appellant] is not questioning [VCI's] right to priority.").  Furthermore, appellant has testified that he was aware that VCI had a senior secured interest in Big Apple's assets when he signed the guaranty. (Adv. Proc. No. 23, Little Decl. Ex. 18, Julian Salim Dep. at 28-29, 32.)  Even construing the evidence in favor of the nonmoving party, the court notes that the record does not provide any justification or excuse for the transfer of funds to appellant's mother.  There is no evidence that transferring $335,000.00 away from a senior lender, VCI, to pay off a debt owed to a junior lender, appellant's mother, would benefit Big Apple or was otherwise justified.  *See Northeast Remarketing Servs., Inc. v. Guthier (In re Guthier)*, No. 09-50008, 2010 WL 1443989, at *4-5

(Bankr. N.D.N.Y. Apr. 9, 2010) (finding malice where defendant intentionally contravened her duty to remit funds due on the sale of a vehicle without justification or excuse).

The court also concludes that appellant's transfer of funds to his brother in Syria was not justified or excused. Appellant states that "[h]e was in the business of buying and selling cars all over the world," "[h]e had done other business deals with Rami Osman in the past," "[h]e believed he was buying cars in the ordinary course of business. Salim entered into an agreement with Rami Osman," and "Salim believed that the deal in Syria would have 'been extremely lucrative and resulted [*sic*] in a multi-million dollar transaction.'" (ECF No. 5, Appellant Br. at 21.)

These self-serving assertions, however, are not supported by any evidence in the record. *See Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts"). The only supporting evidence regarding the transaction with Osman is the purported agreement, attached to appellant's affidavit in opposition before Judge Stong. (Adv. Proc. No. 31, Salim Aff. Ex. A.) The agreement, which states that Osman had received $485,000 from appellant and $500,000 from appellant's brother in exchange for "used cars" of unspecified make and year,

quantity, or quality, and at an unspecified rate, is dated January 15, 2011, approximately two months *before* the disputed transfers. Therefore, the agreement between appellant and Osman fails to support appellant's contentions that the transfers in March 2011 were transactions motivated by anticipated profits for Big Apple.

Additionally, appellant has failed to raise material facts which dispute the other indicia of malice: that he was aware that the loan from VCI required Big Apple to remit funds upon sale of vehicles, that Big Apple refused to permit VCI to audit Big Apple's inventory, and that the funds were transferred at or about the same time that VCI auditors were denied entry to Big Apple. *In re Alessi*, 405 B.R. at 68 (deliberate and intentional refusal to pay sale proceeds despite a contractual provision requiring it to satisfied malice standard within the meaning of section 523(a)(6)).

Appellant's reliance on *Ford Motor Credit Co. v. Gaullaudet (In re Gaullaudet)*, 46 B.R. 918 (D.Vt. 1985) is inapposite. (ECF No. 5, Appellant Br. at 22.) In *In re Gaullaudet*, the debtor sold only eleven vehicles out of trust, and failed to make payment for them. The court found no evidence of an intent to deceive Ford Credit, or an intent to hide the funds. *Id.* at 923. Moreover, the court found that debtor had used the proceeds of the sales in the operation of the auto-dealership. Here, in contrast, Big Apple sold seventy-eight vehicles out of trust, and

did so while its guarantor, the appellant, transferred funds to family members and attempted to thwart and evade VCI auditors. Moreover, there is no evidence that the funds were used to operate or benefit Big Apple; rather, the funds were used to pay off a lower-priority loan or were transferred out of the country and away from VCI's reach.

## CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court is AFFIRMED in its entirety and the appeal is dismissed. The Clerk of Court is respectfully directed to enter judgment and close the case.

**SO ORDERED**

_____/s/_____

Dated:     September 29, 2017     **KIYO A. MATSUMOTO**
            Brooklyn, New York      United States District Judge
                                       Eastern District of New York